UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

---

BENJAMIN DANIELS,

        Plaintiff,

v.

STATE OF NEW JERSEY DEPARTMENT
OF CORRECTIONS, *et al.*,

        Defendants.

Case No. 3:18-cv-15375-BRM-DEA

**OPINION**

---

**MARTINOTTI, DISTRICT JUDGE**

Before this Court is Defendants State of New Jersey Department of Correction ("DOC"), Trevor Beatty ("Major Beatty"), Robert Buechele ("Buechele"), Robert Chetirkin ("Chetirkin"), Salvatore D'Amico ("Major D'Amico"), Anthony Degner ("Degner"), Gary Lanigan's ("Lanigan") (collectively "Defendants") Motion to Dismiss. (ECF No. 3) Plaintiff Benjamin Daniels ("Daniels") opposes the Motion. (ECF No. 7.) Having reviewed the parties' submissions filed in connection with the Motion and having declined to hold oral argument pursuant to Federal Rule of Civil Procedure 78(b), for the reasons set forth below, and for good cause shown, Defendants' Motion to Dismiss is **GRANTED**.

**I.    FACTUAL BACKGROUND**

For the purposes of the Motions to Dismiss, the Court accepts the factual allegations in the Complaint as true and draws all inferences in the light most favorable to Daniels. *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). Further, the Court also considers any

"document *integral to or explicitly relied upon* in the complaint." *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1426 (3d Cir. 1997).

This matter arises out of the alleged racial discrimination and retaliation Daniels incurred working for the DOC. Daniels is a Lieutenant with the DOC currently assigned to the Central Reception and Assignment Facility ("CRAF"), which is responsible for processing inmates in the DOC prison system and employs 300 staff members. (ECF No. 1 ¶ 11.) At all relevant times, Daniels' direct supervisors were Major D'Amico, Major Beatty, Administrator Robert Buechele, Administrator Robert Chetirkin, associate Administrator Degner, and Assistant Superintendent Lisa Schofield ("Schofield"). (*Id.* ¶ 10.)

The facts as to Daniels's case fall within three categories, which will be addressed in turn below: (1) allegations related to his June 16, 2017 Equal Employment Opportunity Commission ("EEOC") right-to-sue letter, (2) allegations related to his August 2, 2018 EEOC right-to-sue letter; and (3) assertions regarding his August 31, 2018, 10-day suspension.

Daniels also seeks to certify a class because he has testified as a witness for various minority employees who he claims have also been the victims of discrimination and retaliation at the hands of Defendants. (*Id.* ¶ 24.) For example, he testified as a witness in Sergeant Jackson's disciplinary hearing on September 19, 2016, and in support of his Equal Employment Division ("EED") complaint. (*Id.* ¶ 23.)

### A. June 16, 2017 EEOC Right-to-Sue

In 2014, Major D'Amico began working at CRAF and instituted "discriminatory employment practices by imposing artificial prerequisites on Lieutenant job assignments by requiring CRAF Lieutenants to submit resumes for future job assignments (administrative Lieutenant, Operations Lieutenant)[.] These job assignment prerequisites/conditions produce an

adverse effect on CRAF black . . . Lieutenants that retained the most 'seniority' at CRAF." (*Id.* ¶ 13.) Prior practice had been to job assignments based on class seniority. (*Id.* ¶ 14.) Further, Major D'Amico reclassified certain Lieutenant job assignments as specialized, requiring extra training that was not made available to Daniels or minority Lieutenants. (*Id.* ¶ 18.)

Therefore, he filed an internal New Jersey EED complaint, which he contends was mishandled because he was "scrutinized," and his first EEOC charge related to this incident. (*Id.* ¶¶ 20, 22.) On June 16, 2017, he received a right-to-sue letter from the EEOC. (*Id.* ¶ 21.) After his filings, Daniels was finally able to secure the necessary training to be qualified for the specialized jobs. (*Id.* ¶ 19.)

### B. August 8, 2018 Right-to-Sue Letter

Daniels's second set of allegations are tied to his March 26, 2018 EEOC complaint, for which he received a right-to-sue letter on August 8, 2018. (*Id.* ¶¶ 25, 32.) His EEOC complaint alleged that Major D'Amico and Major Beatty "purposely dismissed job duties and assignments of all communications operators to create an advantage for a white male-non-Hispanic," although the NJDOC maintained that it disposed of this job assignment throughout New Jersey. (*Id.* ¶ 25.) Essentially, Daniels alleges the Majors discontinued the "communications operator" position to ultimately relocate the white male, who previously held the position, to the more favorable assignment of "mail room", which contained better working conditions and better days off. (*Id.* ¶¶ 26-28.)

The EEOC complaint also alleged details regarding an incident that occurred in February or March of 2018, where Daniels was instructed by Degner, Major Beatty, and Major D'Amico to change Sergeant Maurice Jackson's, a black male, shift and regular days off to less favorable options. (*Id.* ¶ 37, 42.) Daniels refused to change his shift and days off, believing the action to be

3

discriminatory and retaliatory. (*Id.* ¶ 38.) Therefore, he memorialized the chain of events and his discomfort in an email to his union representative and Defendants. (*Id.* ¶ 37, 39.) Major Beatty responded to his email in a manner that led him to be reprimanded by the DOC. (*Id.* ¶¶ 40, 43.) As a result of Daniels's reactions to Defendants' conduct, he was retaliated against. Specifically, his work was subject to "over scrutinization," he received an increase in work assignments, and encountered more than usual investigations, to which his white male co-worker was not subject. (*Id.* ¶¶ 32, 36.) Daniels was also "accosted/harassed" by Major D'Amico through a "barrage" of questions, including whether he thought D'Amico was a racist. (*Id.* ¶ 33.) D'Amico was later subject to remedial action for his behavior. (*Id.* ¶ 34.)

Daniels was also retaliated against as a result of filing his March 26, 2018 EEOC complaint. (*Id.* ¶ 46.) He was no longer permitted to have 24-hour email access and was no longer permitted the use of "flex time." (*Id.*) On August 2, 2019, he received his right-to-sue letter from the March 26, 2018 EEOC complaint, which was dated July 30, 2018. (*See* ECF No. 1-1)

### C. August 31, 2018 10-day suspension

The third set of allegations relate to a 10-day suspension levied against him. On August 10, 2018, Daniels was issued a Preliminary Notice of Disciplinary Action and a Final Notice of Disciplinary Action on August 31, 2018, relating to an unidentified incident that occurred on June 29, 2018, seeking an unpaid suspension for ten days. (ECF No. 1 ¶ 50.) He asserts these "disciplinary charges . . . were issued with retaliatory intent and represent a continuing course of retaliation by Defendant against this [him]." (*Id.*) He alleges they were a response to his most recent EED complaint and whistle-blowing activities. (*Id.*) After serving nine days of his suspension, it was withdrawn "due to additional information that CRAF had received" and replaced with "a Letter of Counseling." (*Id.* ¶ 53.)

## II. PROCEDURAL HISTORY

On October 29, 2018, Daniels filed a Complaint alleging: (1) race discrimination, disparate impact, and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"), and the New Jersey Law Against Discrimination ("NJLAD"); (2) retaliation, in violation of 42 U.S.C. § 1981; and (3) retaliation in violation of the Conscientious Employee Protection Action ("CEPA"), N.J.S.A. 34:19-1, *et seq.* (*See* ECF No. 1.) On December 11, 2018, Defendants filed a Motion to Dismiss on the basis that all claims relating to the June 16, 2017 right-to-sue letter are barred by the statute of limitations and all Title VII claims relating to the 10-day suspension and retaliation for filing the March 26, 2018 EEOC complaint should be dismissed for failure to exhaust administrative remedies. (*See* ECF No. 3-1.) Daniels opposes the Motion. (ECF No. 7.)

## III. LEGAL STANDARD

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all inferences in the facts alleged in the light most favorable to the [plaintiff]." *Phillips*, 515 F.3d at 228. "[A] complaint attacked by a . . . motion to dismiss does not need detailed factual allegations." *Bell Atl. v. Twombly*, 550 U.S. 544, 555 (2007). However, the Plaintiff's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286. Instead, assuming the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for misconduct alleged." *Id.* This "plausibility standard" requires the complaint allege "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a 'probability requirement.'" *Id.* (quoting *Twombly*, 550 U.S. at 556). "Detailed factual allegations" are not required, but "more than an unadorned, the defendant-harmed-me accusation" must be pled; it must include "factual enhancements" and not just conclusory statements or a recitation of the elements of a cause of action. *Id.* (citing *Twombly*, 550 U.S. at 555, 557).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

While as a general rule, a court many not consider anything beyond the four corners of the complaint on a motion to dismiss pursuant to 12(b)(6), the Third Circuit has held "a court may consider certain narrowly defined types of material without converting the motion to dismiss [to one for summary judgment pursuant under Rule 56]." *In re Rockefeller Ctr. Props. Sec. Litig.,* 184 F.3d 280, 287 (3d Cir. 1999). Specifically, courts may consider any "document *integral to or explicitly relied upon* in the complaint." *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d at 1426.

## IV. DECISION

### A. Title VII Claims Preceding June 16, 2017 Right-to-Sue

Defendants argue that "[a]ll claims asserted by Daniels pertaining to his 2017 EEOC charge and subsequent June 16, 2017, right to sue letter must be dismissed as barred by the 90 day statue of limitations." (ECF No. 3-1 at 8.) Daniels's opposition acknowledges that the claims pertaining to his January 16, 2017 right-to-sue are beyond the 90-day statue of limitations. Instead, he contends that the claims "are well within 300 days of the next filing of a[n] EEOC complaint." (ECF No. 7 at 9.)

Prior to filing a Title VII suit, a plaintiff must exhaust all administrative remedies. "A plaintiff's failure to exhaust administrative remedies is a prudential requirement, rather than a jurisdictional one." *Scocozza v. New Jersey*, No. 14-2095, 2014 WL 6674453, at *4 (D.N.J. Nov. 25, 2014) (citing *Anjelino v. N.Y. Times Co.*, 200 F.3d 73, 87 (3d Cir. 1999) (holding that the district court erred "in considering the [defendant's] failure to exhaust and timeliness defenses as grounds for dismissal under Rule 12(b)(1) for lack of subject matter jurisdiction"). "In Title VII actions, failure to exhaust administrative remedies is an affirmative defense in the nature of statute of limitations." *Williams v. Runyon*, 130 F.3d 568, 573 (3d Cir. 1997).

Therefore, "a plaintiff must timely file a charge with the EEOC that contemplates the claims of discrimination to be asserted." *Scocozza*, 2014 WL 6674453, at *4. "Under Title VII, a charge of race discrimination in employment must be filed with the EEOC within 180 days of the occurrence of the alleged unlawful employment practice." *Burgh v. Borough Council of Borough of Montrose*, 251 F.3d 465, 469 (3d Cir. 2001). The 180-day deadline is extended to 300 days when the plaintiff lives in a "deferral state," such as New Jersey and Pennsylvania. *Scocozza*, 2014 WL 6674453, at *4. (citing 42 U.S.C. § 2000e–5(e)(1); 29 U.S.C. § 626(d); *Cardenas v. Massey*,

7

269 F.3d 251, 255 n. 2 (3d Cir. 2001). Thereafter, "[t]he EEOC must serve notice of the charge on the employer within ten days of the filing of the charge." *Burgh*, 251 F.3d at 469-70. The EEOC is required to investigate the charge "and the complainant must allow a minimum of 180 days for the EEOC investigation to proceed." *Id.* at 470.

If the EEOC has not resolved the charge after 180 days, it must advise the plaintiff through a "right-to-sue" letter "that it sees no reason to take action on the complaint." *Id.* (citations omitted). After 180 days, if the EEOC has not issued a right-to-sue letter, the plaintiff may request one and the EEOC must issue the letter promptly. *Id.* "The receipt of the right-to-sue letter indicates that a complainant has exhausted administrative remedies, an essential element for bringing a claim in court under Title VII." *Id.* (citations omitted). A plaintiff cannot bring a Title VII suit without having first received a right-to-sue letter. *Id.* (citation omitted). If the plaintiff does choose to bring a Title VII action, "it must be filed within 90 days of the date on which the complainant has notice of the EEOC's decision not to pursue the administrative charge." *Id.* (citing 42 U.S.C. § 2000e–5(f)(1)). The start of 90-day period is generally triggered by the date the plaintiff receives the right-to-sue letter. *Id.*; (citing *Seitzinger v. Reading Hosp. and Med. Ctr.*, 165 F.3d 236, 239 (3d Cir. 1999); *Mosel v. Hills Dept. Store, Inc.*, 789 F.2d 251, 252 (3d Cir. 1986)).

"Both the 180–day period for filing the administrative complaint and the 90–day period for filing the court action are treated as statutes of limitations." *Id.* (citation omitted). The Third Circuit strictly construes these periods and has held that "even one day late is time-barred and may be dismissed." *Id.* The statute of limitations, however, does not begin to run unless there has been "final agency action," such as the EEOC issuing a right-to-sue letter. *Id.* at 470-71. Without "final agency action," a plaintiff cannot bring suit. *Id.*

Here, Daniels received his first right-to-sue letter on June 16, 2017, and this action was filed on October 29, 2018, well beyond the 90-day period. Therefore, all claims relating to the June 16, 2017 right-to-sue letter, which can be found in Section A of the Factual Background above, are barred by the statue of limitations. Accordingly, Defendants' Motion to Dismiss as to these issue is **GRANTED**.

B. **Title VII Claims Relating to Daniels' 10-day Suspension and Relation for Filing the March 26, 2018 EEOC Complaint**

Defendants argue Daniels's Title VII claim relating to his 10-day suspension and retaliation for filing his March 26, 2018 EEOC complaint should be dismissed for failure to exhaust his administrative remedies, because he never filed an EEOC charge on such actions. (ECF No. 3-1 at 9.) In response, Daniels argues he has filed "numerous EEOC complaints and all complaints are extremely similar in nature," and therefore, Defendants were aware of his complaints. (ECF No. 7 at 9-10.)

To file a Title VII suit, a plaintiff must timely file a charge with the EEOC within 300 days of the occurrence of the alleged unlawful employment practice. *Scocozza*, 2014 WL 6674453, at *4. "The purpose of this administrative exhaustion requirement is to put the EEOC on notice of the plaintiff's claims and afford it the opportunity to settle disputes through conference, conciliation, and persuasion, avoiding unnecessary action in court." *Webb v. City of Phila.*, 562 F.3d 256, 262 (3d Cir. 2009) (citations omitted). A plaintiff cannot "bypass the administrative process." *Id.* (citation omitted). "[T]he parameters of the civil action . . . are defined by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Id.* (citation omitted).

The Complaint does not provide any indication that Daniels filed an EEOC complaint as to his 10-day suspension or retaliation for filing his March 26, 2018 EEOC complaint. The

9

Complaint also fails to allege he received a right-to-sue letter as to either of those claims. In fact, there is no indication that Daniels filed any EEOC complaints after his March 26, 2016 EEOC complaint. Clearly, Daniels March 26, 2018 EEOC complaint, which he contends gave rise to the retaliation, could not have been incorporate in that filing. Also, his suspension, occurring after the issuance of the August 2, 2018 right-to-sue letter could not have fallen within the scope of that March 26, 2018 EEOC charge. Consequently, both Title VII claims must be dismissed for failure to exhaust administrative remedies, since Daniels did not put the EEOC on notice of his claims and afford them the opportunity to settle his disputes. *Webb*, 562 F.3d at 262. Accordingly, Defendants Motion to Dismiss as to these issues is **GRANTED**.[1]

### C. Class Certification

Defendants argue Daniels' request for class certification should be denied because he fails to meet Federal Rule of Civil Procedure 23's requirements. (ECF No. 3-1 at 11.) Daniels contends because "there are many injured persons in relation to this claim" and he "has testified as [a] witness in numerous EED complaints," he should be granted class certification. (ECF No. 7 at 11-12.)

#### 1. Standard of Review

The Third Circuit has observed that "Rule 23 is designed to assure that courts will identify the common interests of class members and evaluate the named plaintiffs' and counsel's ability to fairly and adequately protect class interests." *In re Comm. Bank of N. Va.*, 622 F.3d 275, 291 (3d Cir. 2010) (quoting *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 799 (3d Cir. 1995) (alterations omitted). Rule 23 contains two sets of requirements. First, a

---

[1] Therefore, the only remaining claims before this Court are those associated with Daniels' August 2, 2018 right-to-sue letter, which are discussed in detail in Section B of the Factual Background.

party seeking class certification must demonstrate the class satisfies the requirements of Rule 23(a):

> (1) the class is so numerous that joinder of all members is impracticable [numerosity]; (2) there are questions of law or fact common to the class [commonality]; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class [typicality]; and (4) the representative parties will fairly and adequately protect the interests of the class [adequacy].

Fed. R. Civ. P. 23(a).

Second, plaintiffs must show that the requirements of one of the provisions of Rule 23(b) are met. Federal Rule of Civil Procedure 23(b) provides:

> (b) Types of Class Actions. A class action may be maintained if Rule 23(a) is satisfied and if:
>
> (1) prosecuting separate actions by or against individual class members would create a risk of:
>
> (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or
>
> (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests;
>
> (2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or
>
> (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:
>
> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) the likely difficulties in managing a class action.

Importantly, the Third Circuit has instructed that "each Rule 23 component [must] be satisfied" in order for a court to certify a class. *In re Hydrogen Peroxide*, 552 F.3d 305, 310 (3d Cir. 2008) (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 630 (1997). A plaintiff "has the burden of proof by a preponderance of the evidence that she has met each element of Rule 23." *Coyle v. Hornell Brewing Co.*, No. 08-2797, 2011 WL 2147218, at *3 (D.N.J. May 26, 2011).

Prior to determining whether the requirements of Rule 23 have been met, the Court must first analyze whether the proposed class definition is "readily ascertainable based on objective criteria." *Agostino v. Quest Diagnostics Inc.*, 256 F.R.D. 437, 478 (D.N.J. 2009). In order to determine whether a proposed class is ascertainable, the Court must engage in a two-part analysis. First, the Court must determine whether the defined class specifies "a particular group that was harmed during a particular time frame, in a particular location, in a particular way." *Rowe v. E.I. Dupont De Nemours & Co.*, 262 F.R.D. 451, 455 (D.N.J. 2009). Second, the Court must be able to ascertain the class's membership in an objective manner. *Id.*; *Byrd v. Aaron's Inc.*, 784 F.3d 154, 163 (3d Cir. 2015) (finding the Third Circuit has implemented a two-fold inquiry requiring a plaintiff to show: "(1) the class is defined with reference to objective criteria; and (2) there is a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition").

Significantly, in demonstrating ascertainability, a plaintiff need not identify every class member at the class certification stage; instead a plaintiff is required to show that "class members *can be identified*." *Byrd*, 784 F.3d at 163 (citation omitted) (emphasis in original). "If class

members are impossible to identify without extensive and individualized fact-finding or 'mini-trials,' then a class action is inappropriate." *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 593 (3d Cir. 2012). Then, the Court must determine whether the plaintiff satisfied the prerequisites for maintain a class action as set forth in Rule 23(a). After meeting the threshold requirements of Rule 23(a), a plaintiff must establish the proposed class meets the requirements of Rule 23(b).

Here, both Daniels's Complaint and Opposition Brief merely allege he should be granted class certification because he has testified as a witness for various minority employees who been claimed to be the victims of discrimination and retaliation at the hands of Defendants. (ECF No. 1 ¶ 24 and ECF No. 7 at 11-12.) Neither the Complaint nor the Opposition Brief articulate a proposed class definition that is "readily ascertainable based on objective criteria." *Agostino*, 256 F.R.D. at 478. Daniels fails to identify "a particular group that was harmed during a particular time frame, in a particular location, in a particular way," and the Court cannot ascertain the class's membership in an objective manner. *Rowe*, 262 F.R.D. at 455.

Moreover, his bare allegations do not satisfy the two-prong test required pursuant to Federal Rule of Civil Procedure 23. Daniels, holding the burden, fails to establish that his proposed class meets all four requirements in Rule 23(a) and that the proposed class qualifies under at least on section of Rule 23(b). He fails to allege: (1) the potential number of plaintiffs; (2) whether there are questions of law or fact common to the class; (3) whether his claim is typical of those of the members of the class; and (4) whether he will fairly and adequately protect the interests of the class. Accordingly, Daniels' request for class certification is **DENIED**.

**IV. CONCLUSION**

For the reasons set forth above, Defendants' Motion to Dismiss is **GRANTED** (ECF No. 3)**.** Daniels may file an amended Complaint by no later than August 12, 2019.

Date: July 31, 2019 */s/ Brian R. Martinotti*
**HON. BRIAN R. MARTINOTTI**
**UNITED STATES DISTRICT JUDGE**